1  **LAW OFFICES OF SANFORD M. PASSMAN**
   Sanford M. Passman, Esq., SBN 77701
2  6303 Wilshire Boulevard, Suite 207
   Los Angeles, CA 90048
3  (323) 852-1883 phone; (323) 852-1899 fax
   sandy@sandypassman.com
4

5  Attorney for Elaine Gregorius

6

7

8                 UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  ELAINE GREGORIUS,                ) CASE NO:  SA CV13-1412(CJC) RNBx
                                     )
12              Plaintiff,           ) FIRST AMENDED COMPLAINT FOR:
                                     )
13  vs.                              ) 1.   Violation of Commodity Exchange Act of
                                     )        1936 and CFTC Regulations;
14  ESSEX FUTURES, an entity the form of ) 2.   Breach of Contract;
    which is unknown; GHOLAMREZA      ) 3.   Breach of the Covenant of Good Faith and
15  SHIRAZI aka REZA SHIRAZI, an     )        Fair Dealing;
    individual; and DOES 1 through 10, ) 4.   Breach of Fiduciary Duty;
16  inclusive,                       ) 5.   Intentional Misrepresentation;
                                     ) 6.   Constructive Fraud
17              Defendants.          ) 7.   Negligent Misrepresentation;
                                     ) 8.   Negligent Supervision
18                                   ) 9.   Financial Elder Abuse (Welfare and
                                     )        Institutions Code §15600, et seq. and Calif.
19                                   )        Civil Code §3345);
                                     ) 10.  Declaratory Relief;
20                                   ) 11.  Accounting;
                                     ) 12.  Involuntary Trust Pursuant to Calif. Civil
21  _____ )        Code §2224

22

23                    JURISDICTION AND VENUE

24      1.      The United States District Court for the Central District of California has jurisdiction

25  over this action as a result of the Defendants' violations of the Commodity Exchange Act of 1936,

26  codified at 7 U.S.C. 1, et seq., the Commodity Futures Trading Commission Act of 1974, at Title 17,

27                                   1

28  _____
          FIRST AMENDED COMPLAINT FOR DAMAGES

1  Chapter 1 Code of Federal Regulations and violations of the Dodd-Frank Wall Street Reform and

2  Consumer Protection Act of 2010 at 7 U.S.C. §12, et seq., and the amount in controversy exceeds the

3  sum of $75,000.00, exclusive of interest and costs.

4      2.      Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391(a),

5  in that a substantial part of the events and/or omissions giving rise to the claims at issue occurred in

6  this judicial district.

7  IDENTITY OF THE PARTIES

8      3.      Plaintiff Elaine Gregorius (hereinafter "Plaintiff" and/or "Elaine") is an individual

9  who resides in the County of Orange, State of California.

10      4.      Defendant Essex Futures (hereinafter "Essex") is a business entity, the form of which

11  is unknown to Plaintiff, and Plaintiff is informed and believes that the Defendant's principal place of

12  business is located in the County of Orange, State of California.

13      5.      Defendant Gholamreza Shirazi (hereinafter "Reza") was at all operative times

14  employed by Defendant Essex and Plaintiff is informed and believes that Reza resides in the County

15  of Orange, State of California.

16      6.      The true names and capacities of defendants identified as Does 1 through 10 are

17  currently unknown to Plaintiff who, therefore, sues such defendants by these fictitious names.  When

18  the true names and capacities of Does 1 through 10 are ascertained, Plaintiff will amend this

19  Complaint to assert their true names and capacities.  Plaintiff is informed and believes and based

20  thereon alleges that each fictitiously named defendant is responsible in some manner for the

21  occurrences herein alleged and that Plaintiff's damages, as herein alleged, were proximately caused

22  by each such defendant.

23      7.      Plaintiff is informed and believes and, on that basis, alleges that, at all times herein

24  mentioned, all defendants herein, whether named or fictitiously designated (hereinafter collectively

25  referred to as "Defendants"), were the agents, servants, employees, joint venturers, and/or the alter

26  egos of the remaining Defendants, and the acts of each Defendant were within the course and scope

27  2

28  FIRST AMENDED COMPLAINT FOR DAMAGES

1  of their agency, service, employment, and with permission, consent and ratification of each other

2  Defendant.

3      8.      Plaintiff is informed and believes and on that basis alleges that, at all times herein

4  mentioned, all Defendants herein, whether named or fictitiously designated, conspired with each

5  other to commit the acts complained of herein, said acts causing the damages to Plaintiff as alleged

6  herein.

7      9.      Plaintiff is informed and believes and on that basis alleges that the acts of each

8  business entity, whether named or fictitiously designated, committed the acts complained of herein

9  with the authorization, consent, and/or ratification of its officers, directors, managers, partners,

10  members and/or shareholders of said entity.

11      10.      Plaintiff is informed and believes and on that basis alleges that at all times relevant

12  hereto, the Defendants and each of them, whether named or fictitiously designated, conducted their

13  business within the State of California, generated significant revenues from their presence within the

14  State of California and committed a substantial part of the acts complained of herein in the Central

15  District of California.

BACKGROUND FACTS

ELAINE GREGORIUS

18      11.      Plaintiff Elaine was at all relevant times a woman, approximately 74 years of age

19  who, during the commission of all of the acts alleged herein, suffered from a medical condition

20  identified as Hydrocephalus, commonly referred to as "water on the brain".

ELIZABETH GREGORIUS

22      12.      Elizabeth Gregorius is the daughter of Plaintiff Elaine Gregorius and was percipient

23  to all of the representations and/or misrepresentations made by the Defendants at the initial meeting

24  between Plaintiff and Defendants.

ESSEX FUTURES

26      13.      Defendant Essex holds itself out as being an experienced Orange County, California

3

FIRST AMENDED COMPLAINT FOR DAMAGES

futures brokerage firm with 21 years of experience offering top rated, professionally managed futures accounts. Defendant Essex further represents that its brokers can place orders directly to the exchange floor pits in Chicago and New York without the use of a "middle man" and without delay. Essex acts as a commodity trading advisor pursuant to the rules and regulations of the CFTC and relevant sections of the Commodity Exchange Act, 7 U.S.C. 1, et seq., and is registered with the National Futures Association, identification number 0305390.

GHOLAMREZA SHIRAZI

14.     Reza was, at all operative times, employed by Essex as a Commodity Trading Advisor, National Futures Association identification number 0130282, and was the individual who ostensibly managed and advised Plaintiff Elaine's commodities portfolio with Essex. At all relevant times, Reza communicated with Plaintiff, either in person, by telephone, correspondence and/or other forms of electronic communication including but not limited to email.

MICHAEL HANSON

15.     Hanson was a used car salesman at the time of meeting Plaintiff Elaine and her daughter Elizabeth Gregorius (hereinafter "Elizabeth"). Hanson was responsible for selling a used motor vehicle to Elizabeth which is further discussed below and was the individual who introduced Elaine to Reza and Essex and was complicit in all of the acts alleged herein. Hanson has discharged all claims against him by Plaintiff through the bankruptcy process.

STATEMENT OF THE CASE

16.     In or about February of 2010, Plaintiff Elaine and her daughter Elizabeth became acquainted with Hanson who, at that time was employed as a used car salesman at an auto dealership entitled Chevrolet of Irvine. Hanson in fact sold a used motor vehicle to Elaine for her daughter, who had recently moved to California from the State of Florida.

17.     Almost immediately thereafter, Hanson initiated a personal relationship with Elizabeth and methodically began to insinuate himself into the financial affairs of Elaine Gregorius. Ascertaining that the Plaintiff was suffering from the medical condition identified above as

4

FIRST AMENDED COMPLAINT FOR DAMAGES

Hydrocephalus, Hanson used his knowledge of that condition, coupled with the Plaintiff's total lack of experience in financial matters, to tender financial advice and recommendations to Plaintiff. Hanson, by virtue of his relationship with Plaintiff's daughter Elizabeth, spent a significant amount of time at the Gregorius residence, and came into possession of confidential financial documents belonging to the Plaintiff, which indicated that Plaintiff Elaine maintained a brokerage account in Chicago,, Illinois with a brokerage company entitled Mesirow Financial, which as of May, 2011 had a balance of approximately $1,100,000.00 (the "Mesirow account"). Once Hanson ascertained the Plaintiff's financial wherewithal, he immediately began to lobby the Plaintiff to close the Mesirow account and give him the authority to administer her finances including, but not limited to, investing in commodities. As a result of his access to the financial documents referred to above, Hanson was aware that all of Plaintiff's funds at the aforesaid Mesirow reposed in an individual retirement account subject to taxes and penalties if withdrawn prematurely.

18.    The Plaintiff, due to her medical condition, was not functionally capable of understanding the ministrations of Hanson, who had orchestrated his ostensible romantic relationship with the Plaintiff's daughter Elizabeth, so as to give the illusion of trustworthiness.

19.    Plaintiff, having been seduced by Hanson's statements that he, and he alone, could best increase her investment portfolio, did in fact close the Mesirow account, which funds were transferred to an entity identified as Millennium Trust Company, an IRA administrator, located in Oak Brook, Illinois.

20.    Once Hanson had successfully convinced Elaine to close the Mesirow account, he then began to militate in favor of her opening a new commodities account with Defendant Essex. Hanson represented to her that her financial interests would best be served by opening an account with the same brokerage company that he had an account with and to begin trading in commodities and futures. Notwithstanding the fact that Hanson knew that Plaintiff suffered from Hydrocephalus, and that neither she nor her daughter Elizabeth had any knowledge, understanding or sophistication in the area of commodities trading, Hanson nonetheless initiated the relationship between Plaintiff

5

FIRST AMENDED COMPLAINT FOR DAMAGES

1   and defendants Essex and Reza.

2       21.    In or about August, 2011, Hanson accompanied Plaintiff and her daughter Elizabeth

3   to the offices of Defendant Essex located in Irvine, California.  After the introductory formalities

4   were dispensed with, discussion was had between Defendant Reza and Hanson regarding the opening

5   of a commodities trading account with Defendant Essex.  At all times during the initial meeting,

6   Plaintiff's daughter Elizabeth was present and a party to all of the colloquy between the respective

7   parties.  Notwithstanding the fact that Hanson was aware of the medical condition Plaintiff suffered

8   from, it was apparent to the naked eye that Plaintiff Elaine was having difficulty comprehending any

9   of the information being presented to her given her physical condition and lack of sophistication in

10  the area of commodities futures.  It was suggested by Hanson and Reza in tandem that Plaintiff

11  authorize Hanson to facilitate all buy and/or sell orders to Reza.  Defendant Reza and Hanson

12  successfully convinced the Plaintiff to in fact execute such authorization in addition to a number of

13  other documents, some of which contain the Plaintiff's signature and others that do not.  The

14  documents in question contain the name Vision Financial Markets, an entity completely unknown to

15  the Plaintiff and with whom the Plaintiff has no relationship of any kind.

16      22.    Defendant Reza and Hanson, at the initial meeting, informed Plaintiff that her

17  relationship would be with Essex Financial who would, as stated above, advise and manage her

18  commodities portfolio with Defendant Essex.  At no time was an explanation given to Plaintiff as to

19  the purpose for executing Vision Financial documents, nor was any explanation given to the Plaintiff

20  as to what role Vision Financial would play with respect to her commodities portfolio with Essex.

21      23.    At no time was the Plaintiff given an Essex customer contract, Essex Managed

22  Account Agreement, Essex Managed Account Authorization, Essex Standard Risk Disclosure, Essex

23  Fee Schedule, Essex Fee Authorization, or any other documentation containing the imprimatur of

24  Essex.  Furthermore, at the initial meeting wherein Elaine's account was activated, Reza made

25  representations consistent with the representations stated by Essex on the Essex Future's website.

26      24.    It is common knowledge within the investment community that the trading of

27                                              6

28  FIRST AMENDED COMPLAINT FOR DAMAGES

commodities and/or futures is a high risk activity, best left to experienced investors, none of which was communicated to Elaine by either Reza, Hanson or any representative of Essex.  The lack of knowledge in dealing with commodities and/or futures by both Plaintiff and her daughter was communicated to both Reza and Hanson who, nonetheless, encouraged Plaintiff to commence actively trading in the area.

25.    With that said, and having been advised by the trusted Defendant Reza as well as Hanson that they would oversee Plaintiff's brokerage account, at all times exercising the requisite perspicacity they stated to Plaintiff that they possessed, Plaintiff opened the account.  Subsequent to the initiation of the investment account, the Plaintiff underwent invasive brain surgery to mitigate the aforementioned medical condition she had been suffering from, which condition had greatly diminished her ability to comprehend the vagaries of day to day living, let alone the intricacies of trading in commodities and/or futures.  From the initiation of the Essex account in August, 2011 through the termination of said account in or about December, 2012, Hanson and Defendant Reza had absolute control of Plaintiff's commodities account and, as will be seen from the allegations contained herein, acted completely in their own self interest, to the complete financial detriment of Plaintiff.

26.    During the year 2012, Plaintiff suffered trading losses in an amount believed to be in excess of $520,000.00.  A review of trading statements for that period of time reflects that the Plaintiff's account was, in the vernacular of the brokerage industry, "churned and burned", generating substantial commissions to Essex and Reza.  Furthermore, Plaintiff is informed and believes that Essex and Reza compensated Hanson, in violation of the Commodity Exchange Act and relevant sections of the Commodity Futures Trading Commission Regulations, from fees generated from the unlawful manipulation of Plaintiff's brokerage account.

27.    During the pendency of Plaintiff's account with Essex, Hanson clandestinely approached Plaintiff and induced her to "loan" him the sum of $100,000.00.  Hanson represented to Plaintiff that he was seeking to borrow said sum for investment purposes.  Plaintiff is informed and

7

FIRST AMENDED COMPLAINT FOR DAMAGES

1   believes that in truth and fact, Hanson had suffered trading losses to his own commodities account at

2   Essex and was unable to cover said losses.

3        28.    In or about December of 2012, Plaintiff was contacted by a representative of

4   Millennium, the IRA administrator identified as Karen Moretti, who advised her that she should take

5   a very close look at the remaining balance in her Essex account, given the fact that the approximate

6   $800,000.00 initially invested had been diminished to a remaining balance of approximately

7   $129,000.00.

8        29.    Plaintiff did heed the advice of Millennium, quickly ascertaining the truth of the

9   representation made by said Millennium employee, and immediately closed out the Essex account,

10   withdrawing the remaining balance of approximately $129,000.00.

11        30.    As of the date of this Complaint, Plaintiff has suffered trading losses due to the

12   unlawful and unethical practices of Essex, Reza, Hanson and Does 1 through 10, in the amount of

13   approximately $520,000.00.

14   COUNT ONE

15   Violation of Commodity Exchange Act and CFTC Regulations

16   (As against Defendants Reza, Essex and Does 1 through 10)

17        31.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30 as

18   though fully set forth herein.

19        32.    At the risk of redundancy, Plaintiff again alleges that her physical condition at the

20   time Hanson introduced Plaintiff to Defendants Reza and Essex, was not only patently obvious to the

21   respective Defendants but, as to Essex and Reza, specific information concerning the medical

22   condition Plaintiff suffered from was communicated at the initial meeting between the respective

23   parties and, Plaintiff alleges, was specifically communicated to Reza and Essex by Hanson prior to

24   the initial meeting between Plaintiff and Defendants at the offices of Essex. As will be seen from the

25   allegations of the following counts, Defendants Reza and Essex, both of whom were licensed and/or

26   registered with the appropriate regulatory agencies, and who conducted business under the

27   8

28   FIRST AMENDED COMPLAINT FOR DAMAGES

1  Commodity Exchange Act, failed to comply with certain rules and/or regulations of said regulatory

2  and/or enforcement agencies.

3      33.    Defendants and each of them violated the Act by failing to provide to Plaintiff an

4  Essex Managed Account Agreement, Essex Managed Account Authorization, Essex Standard Risk

5  Disclosure, Essex Fee Schedule, Essex Fee Authorization, or any other documentation containing the

6  imprimatur of Essex.  Furthermore, at no time did the Defendants inform nor explain to Plaintiff the

7  "clearing arrangement" between Defendant Essex and Vision Financial Markets.  No explanation

8  was given to Plaintiff by Reza, Essex and/or Does 1 through 10 with respect to who specifically

9  would be monitoring Plaintiff's customer account; providing investment recommendations or

10  accepting customer orders; executing customer orders; providing written confirmations of executed

11  orders to Plaintiff; receiving or delivering funds from or to customers; maintaining books and

12  records that reflect transactions, including rendering monthly or periodic statements of accounts to

13  Plaintiff; dividing custody of funds and securities in Plaintiff's account; clearing and settling

14  transactions affected in Plaintiff's account; and providing electronic systems for compliance and

15  management of the introducing broker, allegedly the Defendant Essex.

16      34.    Furthermore, Defendants and each of them failed to advise Plaintiff how trades are

17  conducted, how quickly the trades are executed, what exchange the trades are conducted on, how

18  Plaintiff's funds would be transferred from Millennium and to whom the funds from Millennium

19  would be transferred.

20      35.    Additionally, no information was disclosed by Reza, Essex or Does 1 through 10

21  regarding the division of functions between Defendant Essex, the alleged introducing broker and

22  Vision Financial Markets, the alleged clearing firm.  No information was communicated to the

23  Plaintiff regarding any back office operations, as those words are commonly used in the commodities

24  industry, nor the division of responsibility between Essex and Vision.  Plaintiff was never given a

25  copy of the CFTC Guarantee Agreement between Essex and Vision as mandated by the CFTC,

26  pursuant to CFTC Regulations requiring "brokers" such as Defendant Essex, who lack the necessary

27  9

28  FIRST AMENDED COMPLAINT FOR DAMAGES

1  financial wherewithal as mandated by the CFTC, and which necessitated the relationship between

2  Essex and Vision, which, in and of itself, necessitated the aforesaid guarantee agreement, which

3  agreement provides certain financial protection for investors, as was the case here.

4       36.     Additionally, no information was given to Plaintiff at any point in time regarding the

5  division of fees and/or commissions between Essex, Vision, principals of Essex, Hanson and/or any

6  other third parties, resulting from trading activity on Plaintiff's account with Defendant Essex.

7  Plaintiff alleges that Essex did not satisfy the adjusted net capital requirements with which they

8  would have to comply, pursuant to CFTC Regulation Section 1.17, 17 C.F.R. Section 1.17, and

9  therefore, was obligated to enter into a guarantee agreement with a commodities broker who could

10  satisfy the herein cited regulation, that entity being Vision Financial Markets.  Defendants failed to

11  disclose that financial arrangement which, Plaintiff alleges, Essex had an absolute obligation to do.

12       37.     Furthermore, Defendants misrepresented material facts concerning commodities;

13  failed to disclose to Plaintiff relevant elements of commodities trading and/or relative sections of the

14  Commodity Exchange Act and/or CFTC Regulations; entered into a fee splitting relationship with a

15  non-licensed individual, to wit, Hanson; never inquired of Plaintiff what her investment or trading

16  objectives were regarding commodities trading, notwithstanding Hanson's knowledge that Plaintiff

17  had no experience of any kind with respect to commodities, futures or the trading thereof; entered

18  into a pattern of conduct manifesting in excessive trading of Plaintiff's account, over whom

19  Defendants had control, for the purpose of generating commissions, without regard to anything other

20  than Defendants' own financial gain, commonly referred to as "churning".  Defendants at all times

21  knew that the source of funds used to execute buy orders on Plaintiff's Essex account were monies

22  reposing in her Individual Retirement Account ("IRA") that had been transferred from Mesirow to

23  Millennium, at the instruction of Defendants, yet failed to recommend to Plaintiff that she seek tax

24  advice before utilizing taxable distributions from said IRA account, which distributions have caused

25  a substantial tax obligation to Plaintiff.  As a result of Defendants' conduct, including repeated

26  violations of the Commodity Exchange Act and the rules and regulations of the CFTC and all other

27       10

28  _____

forms of conduct herein alleged as more fully articulated below, Plaintiff has been damaged in excess of Five Hundred Thousand Dollars ($500,000.00), the actual amount to be proven at the time of trial.  Plaintiff seeks restitution of the monies wrongfully obtained by Defendants as a result of the conduct alleged herein.

COUNT TWO

Breach of Contract

(As against Defendants Essex, Reza and Does 1 through 10)

38.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30 and 32 through 37 as though fully set forth herein.

39.    Given the fact that Essex failed to provide a memorialized agreement between Essex and Plaintiff, Plaintiff alleges that there was, nonetheless, an oral agreement between the respective parties which obligated Defendants Essex and Reza thereto.  Defendants Essex and Reza at all relevant times herein breached the oral agreement between the respective parties by failing to comply with the mandates of the Commodity Exchange Act; the CFTC Rules and Regulations and relevant sections of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (hereinafter the "Dodd-Frank Act"), all to the detriment of Plaintiff Elaine.  Defendants' excessive trading of Plaintiff's account, which generated significant fees to Defendants, pursuant to a pattern of conduct as articulated above and incorporated herein by reference, commonly referred to as "churning", coupled with other unlawful conduct articulated below, constitute a breach of the agreement between the respective parties.  At all relevant times herein, Plaintiff complied with her obligations pursuant to the oral agreement.

40.    As an actual and legal cause of the breaches of contract by Defendants as alleged herein, Plaintiff has been damaged in an amount in excess of Five Hundred Thousand Dollars ($500,000.00), the actual amount to be proven at the time of trial.  Plaintiff seeks restitution of the monies wrongfully obtained by Defendants as a result of the conduct alleged herein.

///

11

FIRST AMENDED COMPLAINT FOR DAMAGES

## COUNT THREE

### Breach of the Covenant of Good Faith and Fair Dealing

(As against Defendants Essex, Reza and Does 1 through 10)

41.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, 32 through 37 and 39 through 40 as though fully set forth herein.

42.     It is axiomatic that in any contractual relationship between parties, there are intrinsic obligations on the respective parties thereto, which are contractually implied, that each of the parties will act in good faith with respect to the other.  As alleged above and incorporated herein by reference, as a result of the various acts of the Defendants, Plaintiff alleges that Defendants and each of them have breached the Covenant of Good Faith and Fair Dealing.  As an actual and legal cause of the breach of Covenant of Good Faith and Fair Dealing by Defendants as alleged herein, Plaintiff has been damaged in an amount in excess of Five Hundred Thousand Dollars ($500,000.00), the actual amount to be proven at the time of trial.  Plaintiff seeks restitution of the monies wrongfully obtained by Defendants as a result of the conduct alleged herein.

## COUNT FOUR

### Breach of Fiduciary Duty

(As against Essex, Reza and Does 1 through 10)

43.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, 32 through 37 , 39 through 40 and 42 as though fully set forth herein.

44.     Defendants Essex, Reza and Does 1 through 10, formed a special relationship with Plaintiff by inducing her to enter into a brokerage agreement for the trading of commodities and/or futures.  Notwithstanding the fact that there does not exist a memorialized agreement between Essex, Reza and/or Does 1 through 10 and Plaintiff, Plaintiff alleges that in fact an oral contract between the respective parties exists which places upon Defendants a fiduciary duty owing by Defendants to Plaintiff, which Plaintiff alleges was breached.  All of Defendants' conduct, as articulated above and in the following causes of action, speaks to the breach of fiduciary duty by Defendants, which

12

1   Defendants owed to Plaintiff.  Plaintiff alleges that said fiduciary duty commenced at the making of

2   the above-referenced oral brokerage agreement between the respective parties and continued thereon

3   until the termination of the brokerage relationship by the Plaintiff in or about December of 2012.

4   Plaintiff is informed and believes that Defendants, and each of them, owed Plaintiff a duty of

5   undivided service and loyalty, which duty is fiduciary in nature and imposed upon Defendants the

6   highest standards of good faith.  The fiduciary duty imposed upon Defendants arose out of the

7   investment relationship between Plaintiff and Defendants, specifically Plaintiff's commodities

8   account with Defendants, which account was administrated by Defendants.  Defendants breached

9   their fiduciary duties to Plaintiff in a myriad of ways, articulated above and below, including but not

10  limited to by providing false and erroneous information to Plaintiff upon which Plaintiff relied.

11       45.     As a direct and proximate result of said breach of fiduciary duty, Defendants are liable

12  to Plaintiff in an amount excess of Five Hundred Thousand Dollars ($500,000.00), the actual amount

13  to be proven at the time of trial.

COUNT FIVE

Intentional Misrepresentation (Fraud and Deceit)

(As against Essex, Reza and Does 1 through 10)

17       46.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, 32

18  through 37, 39 through 40, 42 and 44 through 45 as though fully set forth herein.

19       47.     Defendants knowingly made false representations of fact individually and

20  collectively, knowing said representations were false, and concealed or failed to disclose relevant

21  facts, whether stated directly or indirectly, or by conduct, about present and/or future facts, with the

22  intention to induce the Plaintiff to act in reliance thereon, which in fact Plaintiff did, which reliance

23  was justifiable.  Plaintiff, lacking any experience of any kind in commodities and/or futures trading,

24  justifiably relied on the representations of all of the Defendants, which representations were material

25  and which representations and conduct by Defendants was causally related to damages suffered by

26  Plaintiff.  At the initial meeting, Defendants and each of them, informed Plaintiff, in the presence of

13

FIRST AMENDED COMPLAINT FOR DAMAGES

her daughter, Elizabeth, that opening the commodity futures brokerage account with Essex was a positive financial move for Plaintiff and would greatly increase the value of her financial portfolio. Defendants and each of them encouraged Plaintiff to invest virtually the totality of her IRA of approximately One Million Dollars ($1,000,000.00), and gave her assurances that there was minimal risk involved in the type of trading activity Defendants encouraged Plaintiff to embark upon. Notwithstanding the fact that the CFTC does require written risk disclosures to protect customers from unscrupulous brokers seeking to obtain customers willing to trade in the commodities area without informing them of the risk involved in such an undertaking, no such disclosure between Defendants and Plaintiff was discussed nor proffered to Plaintiff.  Pursuant to the CFTC Rule 1.55 as amended in 1985, Defendants had an affirmative obligation to disclose the risk involved of entering into an aggressive trading program, notwithstanding any other disclosure that may have been proffered to the Plaintiff.  Plaintiff alleges that a customer's decision to trade futures must be knowing and meaningful and, given the fact that Defendants were aware of the physical condition rendering Plaintiff virtually lacking in capacity to make such a "knowing and meaningful" decision, Defendants had an affirmative obligation to insure that Plaintiff had the requisite cognizance to understand the financial consequence of entering into the brokerage agreement that in fact Defendant induced Plaintiff to enter into, all to her substantial financial detriment.  Plaintiff alleges that in recommending to Plaintiff that she engage in the commencement of commodity trading, given her age and her physical infirmity, Defendants were making an implied representation as to the veracity of that recommendation that Plaintiff should commence the brokerage relationship between herself and Defendants which manifested in the subsequent aggressive trading/"churning", that lead to the massive financial loss suffered by the Plaintiff.

48.    At the initial meeting, Reza, Essex and Does 1 through 10 intentionally misrepresented to Plaintiff that her commodities account would be well managed by them and that she would be informed, on a regular basis, of the status of said account and the correlative gains and/or losses.  In fact, none of those representations were true, and none of those promises were kept.

14

---

FIRST AMENDED COMPLAINT FOR DAMAGES

All of the aforementioned representations were made with the intent to induce Plaintiff, notwithstanding her apparent lack of capacity, to in fact initiate the brokerage agreement with Defendant Essex. The aforesaid representations were made in the presence of Hanson as well as Plaintiff's daughter, Elizabeth and Plaintiff further alleges that the proffering of said representations were made with the full cooperation and knowledge of Hanson, other members of Essex, Does 1 through 10 and Defendant Reza. Furthermore, the affirmative misrepresentations by Reza, Essex and Does 1 through 10, that Plaintiff was suitable for the type of brokerage account those defendants were soliciting her to enter into, was the polar opposite in that Plaintiff was completely unsuitable, which constituted fraud. Reza, Essex and Does 1 through 10, based on objective criteria, knew that the Plaintiff lacked the required capacity to fully comprehend the truth, or lack thereof, of any representation made to her, so as to lead a reasonable industry professional to conclude that the Plaintiff was unsuitable for the type of trading activity Defendants were inducing her to enter into.

49.    All of the misrepresentations made to Plaintiff were made in furtherance of a grand scheme between all of the Defendants and the recommendation by Reza that Hanson should be authorized to facilitate all of the trading activity of the Plaintiff's account, was another act in furtherance of the fraud perpetrated upon the Plaintiff by all the Defendants.

50.    Therefore, Plaintiff alleges that at the initial meeting between the respective parties, Plaintiff lacked the capacity to give "authorization" to Hanson, given her medical condition, and said authorization was fraudulently obtained in the first instance, in an attempt to insulate Defendants Reza, Essex and the Doe Defendants from inquiring of Plaintiff as to whether or not she was fully informed as to the substantial losses her trading account had suffered resulting from the conduct of the respective Defendants. The purported authorized representative Hanson was nothing more than a "straw man" utilized by all of the Defendants to facilitate the plundering of the Plaintiff's account, which generated substantial commissions and/or fees to Defendants, all to Plaintiff's great financial detriment. Plaintiff is informed and believes that Defendants and each of them were intentionally untruthful with Plaintiff, and intentionally deceived her. In initiating the brokerage account with

15

FIRST AMENDED COMPLAINT FOR DAMAGES

Defendant Essex, Plaintiff reasonably relied on the false and fraudulent representations of Defendants.  Plaintiff was ignorant of the true facts, and as a result of the fraudulent conduct, concealment and conspiracy of Defendants and each of them, initiated the brokerage account with Essex which Plaintiff would not have done had she been apprised of the true facts.  The fraud perpetrated by the Defendants was discovered by Plaintiff within the last year and could not reasonably have been discovered sooner because of the web of deception and the complicated scheme executed by Defendants.

51.     As a direct and proximate cause of the acts and conduct of Defendants, and each of them, Plaintiff has been damaged in excess of Five Hundred Thousand Dollars ($500,000.00), the actual amount to be proven at the time of trial.  Plaintiff seeks restitution of the monies wrongfully obtained by Defendants.

52.     The acts and omissions of Defendants, and each of them, were done with a conscious disregard of Plaintiff's rights and with the specific intent to defraud and injure Plaintiff, so as to constitute fraud, oppression and malice under California Civil Code §3294.  By virtue of Defendants' willful and wrongful conduct, Plaintiff is entitled to punitive and exemplary damages as determined at trial.

COUNT SIX

Constructive Fraud

(As against Defendants Essex, Reza and Does 1 through 10)

53.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, 32 through 37, 39 through 40, 42, 44 through 45 and 47 through 52 as though fully set forth herein.

54.     Defendants and each of them breached their fiduciary obligations owing to Plaintiff as articulated above and below, including but not limited to false representations concerning commodity trading and the absence of risk therein.  At the time Defendants made those representations, they knew or should have known that said representations were untruthful.  Nonetheless, Plaintiff justifiably relied on said false and fraudulent misrepresentations.

16

FIRST AMENDED COMPLAINT FOR DAMAGES

55.     As an actual and proximate cause of the constructive fraud of the Defendants, Plaintiff has been damaged in an amount in excess of Five Hundred Thousand Dollars ($500,000.00), the actual amount to be proven at the time of trial.  Plaintiff seeks restitution of the monies wrongfully obtained by Defendants.

56.     The acts and omissions of Defendants, and each of them, were done with a conscious disregard of Plaintiff's rights and with the specific intent to defraud and injure Plaintiff, so as to constitute fraud, oppression and malice under California Civil Code §3294.  By virtue of Defendants' willful and wrongful conduct, Plaintiff is entitled to punitive and exemplary damages as determined at trial

COUNT SEVEN

Negligent Misrepresentation

(As against Defendants Essex, Reza and Does 1 through 10)

57.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, 32 through 37, 39 through 40, 42, 44 through 45, 47 through 52 and 54 through 56  as though fully set forth herein.

58.     Defendants and each of them made material misrepresentations of present and/or past fact, lacking the reasonable grounds to make said misrepresentations, with the intent to induce reliance thereon, which in fact Plaintiff did by entering into the subject brokerage agreement with Essex.  The Defendants owed Plaintiff a duty to disclose the true facts.  When Defendants made said misrepresentations, they knew them to be false, or had no reasonable basis to believe they were true and were made to induce Plaintiff to rely thereon.  Plaintiff reasonably relied upon the material misrepresentations of Defendants and could not, by the exercise of reasonable diligence, discovered the true facts.

59.     As a direct and proximate cause of the conduct of Defendants, Plaintiff has been damaged according to proof.

///

17

FIRST AMENDED COMPLAINT FOR DAMAGES

## COUNT EIGHT

### Negligent Supervision

#### (As against Essex and Does 1 through 10)

60.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, 32 through 37, 39 through 40, 42, 44 through 45, 47 through 52, 54 through 56 and 58 through 59 as though fully set forth herein.

61.     Plaintiff alleges that at all relevant times, Defendant Essex failed to supervise the conduct of its employee Reza, so as to guarantee that Reza complied with the requirements of the Commodity Exchange Act and the regulations of the CFTC and amendments thereto including, but not limited to, amendments pursuant to the Dodd-Frank Act.  In failing to supervise their employee, either intentionally or negligently, Defendant Reza was permitted to act in a fashion antithetical to the Plaintiff's best interest, all to Plaintiff's financial detriment.  At no time did Defendant Essex take any action to determine whether the conduct of Defendant Reza was in compliance with the requirements of the Commodity Exchange Act and/or in compliance with the rules and regulations of the CFTC.  No affirmative acts of any kind manifested by Essex to insure compliance by Reza was taken, notwithstanding the substantial trading losses incurred by Plaintiff.  In fact, Plaintiff alleges that no supervisory or oversight protocol existed at Essex during the period of time that Plaintiff's account was being actively traded by Defendant Reza.  Plaintiff further alleges that Reza initiated orders to buy and/or sell, sua sponte, without inquiry nor instruction from Hanson in furtherance of the scheme to generate substantial commissions and/or fees to the respective parties as part of the conspiratorial relationship between the respective parties.  Plaintiff alleges that Essex owed a duty to Plaintiff to supervise the activities of Reza and, in failing to do so, breached that duty, which directly and proximately caused damage to Plaintiff in an amount to be proven at trial.

///

///

///

FIRST AMENDED COMPLAINT FOR DAMAGES

COUNT NINE

(Elder Abuse Pursuant to Welfare and Institutions

Code §15600, et seq. and Calif. Civil Code §3345)

(As against Defendants Essex, Reza and Does 1 through 10)

62.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, 32 through 37, 39 through 40, 42, 44 through 45, 47 through 52, 54 through 56, 58 through 59 and 61 as though fully set forth herein.

63.     At all relevant times herein, Plaintiff was an individual in her mid 70's who suffered from a medical condition identified above as Hydrocephalus, commonly referred to as water on the brain. The medical condition of Plaintiff was known to Defendants and each of them. Notwithstanding the foregoing, Defendants and each of them acted in concert in devising an investment scheme with the intention of depriving Plaintiff of her personal financial resources in violation of the California Elder and Dependant Adult Civil Protection Act, California Welfare and Institutions Code §15600, et seq.  In inducing Plaintiff to enter into the aforementioned investment scheme, knowing Plaintiff's lack of experience in such investments, and knowing Plaintiff's lack of capacity, Defendants nonetheless executed said investment scheme, injuring Plaintiff in a sum believed to be in excess of $500,000.00.  The acts of Defendants constitute financial abuse of an elder under the California Elder and Dependent Adult Civil Protection Act as encompassed in the above identified California Code Sections.  When a party or parties commits financial abuse, defined as the taking, secreting, appropriating, obtaining or retaining real or personal property of an elder with the intent to defraud, on an individual who qualifies as an elder under the aforementioned act and code sections, as does the Plaintiff herein, that person or entity shall be deemed to have taken, secreted or appropriated, obtained or retained property for an unlawful use, if that person or entity, in committing said acts, knew or should have known that their conduct was likely to be harmful to the elder or dependant adult, as was the conduct of the Defendants herein.  Plaintiff alleges that the conduct of the Defendants and each of them was reckless, oppressive, fraudulent and malicious, and

19

1    was committed with such reckless disregard to the Plaintiff's rights, so as to allow the Court to

2    award treble damages pursuant to Civil Code §3345 and to award Plaintiff reasonable attorneys fees

3    in addition to all other remedies provided by law.  Civil Code §3345 provides in relevant part that if

4    the Court finds the Defendants' conduct "caused a senior citizen ... to suffer: ... substantial loss of

5    property set aside for retirement, or for personal care and maintenance ... or assets essential to the

6    health and welfare of the senior citizen ..." and the senior citizen "is substantially more vulnerable

7    than other members of the public to the Defendants conduct because of age, poor health or infirmity,

8    impaired understanding, restricted mobility, or disability, and actually suffered ... economic damage

9    resulting from the Defendants conduct.", as is the case here, the Court may award treble damages.

10         64.     As a direct and legal cause of the acts of Defendants, and each of them, Plaintiff has

11    been damaged in excess of $500,000.00, the actual amount to be proven at time of trial.

12         65.     As a result of the conduct of Defendants, and each of them, Plaintiff is entitled to

13    treble damages pursuant to Civil Code §3345.

14    COUNT TEN

15    (Declaratory Relief)

16    (As to Defendants Essex, Reza and Does 1 through 10)

17         66.     Plaintiff repeats and realleges the allegations contained in paragraphs  1 through 30,

18    32 through 37, 39 through 40, 42, 44 through 45, 47 through 52, 54 through 56, 58 through 59, 61

19    and 63 through 65 as though fully set forth herein.

20         67.     An actual controversy exists between the parties herein within the meaning of Federal

21    Rules of Civil Procedure §57.  In the event that this Court finds the absence of an oral agreement

22    between the respective parties, the Plaintiff asks this Court to issue a declaratory judgment

23    concerning the respective rights and duties of Plaintiff and Defendants as it applies to that certain

24    brokerage agreement between Defendants Essex, Reza and Plaintiff.

25         68.     It is further necessary and proper that this Court adjudicate and declare that the

26    Defendants Essex, Reza and Does 1 through 10, acted in violation of the requirements and

27

20

28

FIRST AMENDED COMPLAINT FOR DAMAGES

1    regulations of the Commodity Enforcement Act, CFTC and Dodd-Frank amendments thereto and in

2    so doing, injured Plaintiff in amount to be proven at trial, but which is believed to be an amount in

3    excess of $500,000.00.

4                          COUNT ELEVEN

5                          (Accounting)

6          (As against Defendants Essex, Reza and Does 1 through 10)

7          69.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, 32

8    through 37, 39 through 40, 42, 44 through 45, 47 through 52, 54 through 56, 58 through 59, 61, 63

9    through 65 and 67 through 68 as though fully set forth herein.

10         70.     Plaintiff alleges that as a result of the various acts and omissions as herein alleged,

11    Plaintiff is entitled to an accounting of all monies received by Defendants Essex, Reza and Does 1

12    through 10, on behalf of Plaintiff, defined as Plaintiff's initial investment believed to be in excess of

13    $800,000.00, as well as an accounting of all fees received by Essex, Reza, Does 1 through 10, and/or

14    any other third parties including but not limited to Hanson.

15                           COUNT TWELVE

16         (Involuntary Trust Pursuant to Calif. Civil Code §2224)

17          (As against Defendants Essex, Reza and Does 1 through 10)

18         71.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, 32

19    through 37, 39 through 40, 42, 44 through 45, 47 through 52, 54 through 56, 58 through 59, 61, 63

20    through 65, 67 through 68 and 70 as though fully set forth herein.

21         72.     Defendants and each of them have gained revenues and profits by fraud, undue

22    influence, breach of fiduciary duty, by violation of the Commodity Enforcement Act, CFTC

23    Regulations and Dodd-Frank amendments thereto, and other wrongful acts as identified and alleged

24    herein, all in derogation of the rights of Plaintiff and in violation of California Civil Code §2224.

25         73.     All revenues and fees received by Defendants and each of them resulting from the

26    acts and omissions alleged herein, rightfully belong to Plaintiff and therefore Defendants, and each

27                               21

28             FIRST AMENDED COMPLAINT FOR DAMAGES

1   of them, are involuntary trustees for the benefit of Plaintiff of all said funds.

2          74.     Plaintiff seeks an order disgorging and remitting to Plaintiff the totality of Plaintiff's

3   financial investment in the trading scheme created and organized by Defendants, including but not

4   limited to the totality of Plaintiff's financial losses incurred as a result of all of the Defendants'

5   conduct as alleged herein.

6                              <u>PRAYER FOR RELIEF</u>

7          WHEREFORE, Plaintiff prays for judgment against Defendants jointly and severally as

8   follows:

9          COUNT ONE:

10         1.     For compensatory damages in an amount to be determined at trial;

11         COUNT TWO:

12         1.     For compensatory damages in an amount to be determined at trial;

13         COUNT THREE:

14         1.     For compensatory damages in an amount to be determined at trial

15         COUNT FOUR:

16         1.     For compensatory damages in an amount to be determined at trial;

17         COUNT FIVE:

18         1.     For compensatory damages in an amount to be determined at trial;

19         2.     For punitive damages in an amount to be determined at trial.

20         COUNT SIX

21         1.     For compensatory damages in an amount to be determined at trial;

22         2.     For punitive damages in an amount to be determined at trial.

23         COUNT SEVEN:

24         1.     For compensatory damages in an amount to be determined at trial;

25         COUNT EIGHT:

26         1.     For compensatory damages in an amount to be determined at trial;

27                                    22

28   FIRST AMENDED COMPLAINT FOR DAMAGES

COUNT NINE:

1.  For compensatory damages pursuant to Welfare and Institutions Code 15600, et seq., and California Civil Code §3345;

2.  For treble damages in an amount to be determined at trial.

COUNT TEN:

1.  hat the Court find and declare that the brokerage agreement between Defendants and Plaintiff is null and void and that Defendants pay to Plaintiff the sum of $523,000.00.

COUNT ELEVEN:

1.  That Defendants, and each of them, be required to provide a complete and accurate accounting reflecting all monies deposited by Plaintiff into said brokerage account, all fees and/or commissions generated by said brokerage account to said Defendants and any other disbursements made by said brokerage account prior to termination of Plaintiff's brokerage account with Defendant Essex.

COUNT TWELVE:

1.  That Defendants, and each of them, be adjudged involuntary trustees for the benefit of Plaintiff, of any and all monies deposited into Plaintiff's brokerage account and disbursed therefrom.

FOR ALL COUNTS:

1.  For pre-judgment interest;

2.  Costs of suit herein incurred;

3.  Attorneys fees where applicable; and

4.  For such other and further relief as this Court deems just and proper.

LAW OFFICES OF SANFORD M. PASSMAN

DATED:  November 7, 2013   By: _____

Sanford M. Passman, Attorney for Plaintiff Elaine Gregorius

23

FIRST AMENDED COMPLAINT FOR DAMAGES

**PROOF OF SERVICE**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) and not a party to the within action; my business address is 6303 Wilshire Boulevard, Suite 207, Los Angeles, California 90048-5001

On November 7, 2013, I served the foregoing:

FIRST AMENDED COMPLAINT

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

John William Cotton
Gartenberg,Gelfand,Hayton & Selden LLP
801 S Figueroa St Ste 2170
Los Angeles, CA 90017
jcotton@cgllp.com

__X__  (By Email) I caused above-referenced documents to be emailed to the addressee at the email address shown above.

____  (By Mail) I caused such envelope, with postage thereon, fully pre-paid, to be placed in the U.S. Mail at Los Angeles, California.

    I am "readily familiar" with the procedures of this office for collection and processing of correspondence for mailing with the United States Postal Service.  It is deposited that same day in the ordinary course of business.  I understand that service made pursuant to Code of Civil Procedure §1013a(3) on motion of a party served, shall be presumed invalid if the postal cancellation date or postal meter date on the envelope is more than one day after the deposit for mailing contained in the affidavit.

____  (By Personal Service) I caused such envelope to be hand-delivered to the addressee, or to their office(s).

____  (State) I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

__X__  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 7, 2013, at Los Angeles, California.


_____
Cathie Quinn

# PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) and not a party to the within action; my business address is 6303 Wilshire Boulevard, Suite 207, Los Angeles, California 90048-5001

On November 7, 2013, I served the foregoing:

## FIRST AMENDED COMPLAINT

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

Michele Pillette                          Jeffrey Golden
Attorney at Law                         Weiland, Golden, Smiley, Wang, Ekva
21571 Calle Otono                      P.O. Box 2470
Lake Forrest, CA 92630                Costa Mesa, CA 92628-2470

____  (By Email) I caused above-referenced documents to be emailed to the addressee at the email address shown above.

_X_  (By Mail) I caused such envelope, with postage thereon, fully pre-paid, to be placed in the U.S. Mail at Los Angeles, California.

> I am "readily familiar" with the procedures of this office for collection and processing of correspondence for mailing with the United States Postal Service.  It is deposited that same day in the ordinary course of business.  I understand that service made pursuant to Code of Civil Procedure §1013a(3) on motion of a party served, shall be presumed invalid if the postal cancellation date or postal meter date on the envelope is more than one day after the deposit for mailing contained in the affidavit.

____  (By Personal Service) I caused such envelope to be hand-delivered to the addressee, or to their office(s).

_X_  (State) I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

_X_  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 7, 2013, at Los Angeles, California.

_____
Cathie Quinn